# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL STEWART AND ILENE
BERGENFELD, *Trustees of the Philip A.*
*Stewart Irrevocable Trust*,

    Plaintiffs,

      v.

NATIONAL EDUCATION
ASSOCIATION, *et. al.*,

    Defendants.

Civil Action No. 02-2014 (CKK)

## MEMORANDUM OPINION
(September 16, 2005)

The present dispute involves proceeds derived from the privatization of Prudential Life

Insurance Company ("Prudential").  Currently before the Court is a Motion to Dismiss by

Defendants National Education Association ("NEA") and National Education Members

Insurance Trust ("NEA Trust") for failure to state a claim under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  Defendants administer a group life insurance contract ("Group

Contract") through its Members' NEA Insurance Plan ("Plan").  The Plan is underwritten by

Prudential.  Plaintiffs Michael Stewart and Irene Bergenfeld are trustees of the Philip A. Stewart

Irrevocable Trust, which is the owner of a Group Life Insurance Contract ("Group Contract")

administered through the Plan.[1]  Plaintiffs contend that they were denied money they were

entitled to from the privatization of Prudential.

The Group Contract is an "employee welfare benefit plan" under the Employee

---

[1]Stewart and Bergenfeld are trustees of the Philip A. Stewart Irrevocable Trust.  There is a
pending motion for class certification in this matter as well, pursuant to R. 23.

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.* Plaintiffs filed an eleven

count amended complaint seeking damages and/or restitution against Defendants for the loss of

conversion privileges and demutualization consideration received by the NEA Trust after

Prudential converted from a participating mutual insurance company to a non-participating stock

company in December 2001. Defendants maintain that Plaintiffs' rights under the contract were

not violated and that no special rights were created when the conversion took place.

After reviewing Defendants' Motion ("Defs.' Mot."), Plaintiff's Opposition ("Pls.'

Opp'n"), Defendant's Reply ("Defs.' Reply"),[2] and the applicable law, the Court finds that

Defendant's Motion to Dismiss must be granted.

## I.  Statutory Framework

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.*,

was enacted as a comprehensive regulation of private employee benefit plans for the purpose of

protecting their participants and beneficiaries. *See Aetna Health Inc. v. Davila*, 542 U.S. 200,

124 S. Ct. 2488 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). ERISA regulates

employee welfare benefit plans ("welfare plans") that "through purchase of insurance or

otherwise, provide medical, surgical, or hospital care, or benefits in the event of sickness,

accident, disability, or death. *Id.* (quoting 29 U.S.C. § 1002(1) (internal quotations omitted)).

ERISA applies to all employee benefit plans established or maintained by an employer engaged

in, or affecting, commerce. 29 U.S.C. § 1003(a)(1). An employee benefit plan is defined as "an

employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . . ."

---

[2]On April 30, 2004, the Court ordered the parties to file notices advising the Court of any legal or factual developments that would bear upon the resolution of this motion. *See* Docket No. 34. The parties filed these notices, and the Court has taken them into consideration as well.

29 U.S.C. § 1002(3).

There are regulations that cover both the fiduciary responsibilities of welfare plans, 29 U.S.C. §§ 1101-1104, and the disclosure of information to plan participants and beneficiaries.  29 U.S.C. §§ 1021-1022.  Under ERISA, participants or beneficiaries of welfare plans can enforce their rights under the terms of their plan in a civil suit.  *See* 29 U.S.C. § 1132(a).  Should a welfare plan terminate, ERISA dictates that the assets of the plan shall be distributed "in accordance with the terms of the plan . . . ."  29 U.S.C. § 1103(d).  ERISA also has an "anti-inurement" provision that prevents the assets of a plan from inuring to "the benefit of any employer," and requires benefits be held "for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expense of administering the plan."  29 U.S.C. § 1103(c)(1).

Congress intended for ERISA to be expansive.  With minor exceptions, state law relating to employee benefit plans is pre-empted by ERISA.  *Pilot Life Ins. Co.*, 481 U.S. at 54.  ERISA section 514(a) explicitly states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  The Supreme Court strictly construes the preemption provision in ERISA, opining that the "federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Aetna Health Inc.*, 124 S. Ct. at 2500 (quoting *Pilot Life Ins. Co.*, 481 U.S. at 54). Any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted.  *Id.* at 2495.

3

## II.  Factual Background

Plaintiffs and other members of the NEA ("Member-Insureds") enrolled in the Group

Contract, originally as "participants," before Prudential changed its ownership structure in 2001

from a mutual insurance company to a publicly owned, stock-based insurance company.  Am.

Compl. ¶ 12.  The life insurance benefit under the Group Contract was one of several programs

the NEA established under its Members' NEA Insurance Plan ("Plan").  *Id*. ¶ 6.  Defendant NEA

Trust is a trust established by the NEA for the purposes of holding the assets of the Plan.  *Id.* ¶ 7.

### A.      *The Group Contract*

Member-Insureds made monetary contributions to the NEA Trust or the National

Education Association Members Benefit Corporation ("NEA MBC"), a wholly owned subsidiary

of the NEA, for the purposes of obtaining the benefits of the Group Contract.  *Id.* ¶ 9.  The NEA

Trust in turn paid the premiums to Prudential from the fund.  *Id.* ¶ 18.  This arrangement was

stipulated for in the Plan.  *Id.*  Defendant NEA established the Plan in or around September 1978.

*Id.* ¶ 6.  Designated Trustees have served the Plan since it became effective.  *Id.* ¶ 7.

The Plan provides group insurance to participants from its membership of approximately

2.7 million school teachers nationwide.  *Id.* ¶ 6.  The Plan's purpose is to

> establish, maintain, and operate, on a voluntary and self-sustaining basis, one or
> more programs to provide benefits in the event of death, accident, sickness,
> disability, or other occurrence affecting participants and their family either on a
> self-funded basis or through one or more insurance policies acquired and
> maintained by the Trustees.

*Id.* Ex. D at 6.

The ERISA statute supplies a definition of an "employee benefit plan" that includes an

"employee welfare benefit plan," which is an employee benefit plan "established or maintained

4

by an employer or by an employee organization, or by both, to the extent that such plan . . . was

established or is maintained for the purpose of providing for its participants or their beneficiaries,

through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident,

disability, death [or other occurrences]."  29 U.S.C. §§ 1002(1), 1002(3).

The Amended Complaint makes it clear that the NEA Members Insurance Plan is covered

by ERISA.  The NEA is an "employee organization" under 29 U.S.C. § 1002(4).  *See* Am.

Compl. ¶ 6 (stating that the "NEA is a national organization of school teachers").  The Plan was

established or maintained by that organization.  *See id.* ¶¶ 6, 42 (stating that "the NEA

established the Members Insurance Plan").  Finally, the Plan's language, quoted *infra*, conforms

to the definition of an "employee welfare benefit plan" under ERISA.[3]  Plaintiffs are participants

and/or beneficiaries under 29 U.S.C. § 1002(B)(7) & (8).  As participants and beneficiaries in the

Plan, Member-Insureds were entitled to certain rights under ERISA.  Am. Compl. Ex. B. at 20.

Pursuant to the Plan, the NEA offered a life insurance benefit to its members through the

Group Contract, underwritten by Prudential.  *Id.* ¶ 8.  Since the Group Contract is a Plan

document, it is also covered by ERISA.  *See id.* Ex. B at 20 ("The terms of the Plan are currently

---

[3]In their opposition, Plaintiffs attempt to obfuscate this issue, suggesting that despite the facts apparent from their Amended Complaint, it is "unclear" whether the Plan is covered by ERISA.  Pls.' Opp. at 39-40.  Plaintiffs suggest that the record is not clear on the question of whether the plan was established or is maintained by an employer or employee organization.  *See id.* at 40.  However, Plaintiffs' belated recharacterization of their Amended Complaint is unavailing.  The Court finds that Plaintiffs' Amended Complaint and supporting documents make it quite clear that ERISA applies to the Plan at issue.  Indeed, Plaintiffs twice stated that the Plan was established by the NEA, and stated clearly that the NEA is an organization of school teachers.  Furthermore, Plaintiffs' supporting documents make it clear that the NEA administers the Plan.  *See* Am. Compl. Ex. B at 21.  The NEA also created the NEA Trust, whose trustees serve as plan fiduciaries who manage the Plan's assets.  It is quite clear that the NEA takes an active role in maintaining the plan, in addition to having clearly established it.

contained in a Trust agreement and operating document governing the Plan, in the insurance

policies issued to the Trust . . .").  The Group Contract consists of (1) the group contract itself,

along with any attachments and endorsements, Am. Comp. Ex. A; (2) a Group Insurance

Certificate, Am. Compl. Ex. B; and (3) the individual applications of Member-Insureds, Compl.

Ex. C.  The group contract contains a provision integrating these documents as the applicable

contract:

> The entire group contract consists of: (1) the Group Insurance Certificate(s) listed
> in the Schedule of Plans, a copy of which is attached to the Group Contract; (2) all
> modifications and endorsements to such Group Insurance Certificates which are
> attached and made a part of the Group Contract by amendment to the Group
> Contract; (3) the forms shown in the Table of Contents as of the Contract Date;
> (4) the Contract Holder's application, a copy of which is attached to the Group
> Contract; (5) any endorsements or amendments to the Group Contract; and (6) the
> individual applications, if any, of the persons insured.

*Id.* ¶ 14 (citing Ex. A, 'General Rules' at (7-1)C).

The NEA Trust's published "Summary Plan Description," Am. Compl. Ex. B, makes it

clear that the Group Contract was administered through the Plan:

> **GENERAL INFORMATION**
> **Plan Name.**  The plan is generally known as the NEA Member Insurance Plan.
> **Trust Name.**  The Trust is generally known as the NEA Member Insurance Trust.
> **Program Name.**  The Program is generally known as the NEA Life Insurance
> Plan.
> . . .
> **Termination and Amendment of Plan or Trust.** The NEA and the Trustees
> reserve the right to modify or terminate the Plan, any Program, or the Trust at any
> time.

Am. Compl. Ex. B. at 20 (emphasis in original).  The Summary Plan Description also alerts

members of their rights regarding programs within the Plan under ERISA.  *Id.* at 22.

6

### B.     Prudential Conversion

Members of a mutual insurance company own "participating life insurance contracts" and have a beneficial right to participate in the insurer's surplus. *Id.* ¶ 21.  Should the expected value of the premium payments charged by the mutual insurer exceed costs, the mutual company's board may return a portion of the members' premiums in the form of dividends. *Id*. ¶ 23.  This ownership structure allows policy owners to obtain insurance protection at cost. *Id.*  In contrast, the price of a "non-participating policy" is set, and policy holders are not entitled to any surplus created by their premiums. *Id.* ¶ 22.

Plaintiffs allege that the Member-Insureds were "members" of the insurance company with a proportional beneficial interest in Prudential's surplus as a result of the Group Contract, which was a "participating" policy. *Id.* ¶ 28.  In support of their position, Plaintiffs point to the fact that Prudential directly determined the premiums for each Member-Insured and that the NEA did not pay any portion of the premiums. *Id.* ¶ 25.  Furthermore, Plaintiffs claim that they are the beneficiaries of the Group Contract and that they specifically allocated their surplus dividends toward reducing the cost of their insurance. *Id.* ¶ 26.  Plaintiffs claim, however, that in contrast to the provision for dividends there is no affirmative agreement in the Group Contract that would allow the NEA Trust to take or use the Member-Insureds membership interest for anyone other than the Member-Insureds. *Id.* at ¶ 27.

In December 2001, the Prudential ownership structure changed and the company was converted into a stock-based life insurance company. *Id.* ¶ 8.  The process of conversion from a mutual insurance company to a stock company is referred to as demutualization.  By reason of the conversion, the Group Contract was terminated and replaced by a "non-participating" policy

underwritten by Prudential Financial Inc. ("PFI"). *Id.* ¶ 32, 35. The old Group Contract provided

a "Conversion Privilege":

> Prudential will give an individual certificate to each insured Member. It will
> describe the Member's coverage under the Group Contract. It will include (1) to
> whom Prudential pays benefits, (2) any protection and rights when the insurance
> ends, and (3) claim rights and requirements.

*Id.* ¶ 35 (citing Ex. A, p. 5) (emphasis omitted). The Conversion Privilege also provided the

Member-Insureds the right to convert their Group Contract rights to individual contracts for

insurance. *Id.* ¶ 36.

For the conversion to take place, the company had to terminate its existing "participating"

policies. *Id.* ¶ 29. Prudential's parent company, Prudential Financial Inc. ("PFI"), underwent its

initial public offering on December 13, 2001, and on that date the "participating" contracts were

dissolved. *Id.* ¶ 31. Prudential compensated members for the loss of their membership interests

with cash, insurance policy credits or stock in the newly created PFI. The resulting compensation

is known as "demutualization interest" or consideration. The consideration was paid to the NEA

Trust, which Plaintiffs assert was required by the New Jersey Conversion Law and given on

behalf of the Member-Insureds as the beneficiaries of the Group Contract. *Id.* ¶ 39.

On September 1, 2002, after receiving the demutualization consideration, the NEA Trust

and the Trustees amended the Plan to redefine "Trust Fund" in section 1.9 of the Plan and

"Surplus Fund" in section 12.2 of the Plan. *Id.* ¶ 44. Plaintiffs claim the new definitions, which

include "any equity shares or proceeds from insurance company demutualization," are an attempt

to retroactively redefine the terms in the Plan to give NEA and the NEA Trust control and

ownership of the consideration. *Id.* (quoting Ex. D-1, p. 15). Plaintiffs claim that Article

Thirteen (13) of the Plan prohibits retroactive amendments that result in the deprivation of participant and beneficiary benefits and that it requires communication between the Plan Administrator and those receiving benefits.  *Id.*

### C.    *Procedural History*

On October 15, 2002, Plaintiffs filed a Complaint before this Court alleging ownership of the demutualization consideration.  On April 4, 2003, Plaintiffs filed an Amended Complaint consisting of eleven counts against the NEA and the NEA Trust.  The Amended Complaint also requested that the Court certify the Plaintiffs as a class pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on behalf of all Members of the NEA who were beneficiaries under the Group Contract through December 13, 2001.[4]

The first three counts arise under different ERISA provisions, and are alleged against both Defendants.  Count I is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and (3).  Count II alleges breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1109.  Count III alleges partial termination and improper allocation of residual assets under 29 U.S.C. § 1103(d).

The remaining claims, Counts IV through XI, do not arise under ERISA's provisions. Counts IV and V are federal common law claims alleging failure of express trust/resulting trust and unjust enrichment-constructive trust, respectively.  The remaining claims, Counts VI through XI, arise under District of Columbia law.  Counts VI and VII allege breach of contract solely against the NEA Trust.  Count VI alleges failure to provide conversion privileges while Count VII alleges deprivation of demutualization consideration.  Count VIII alleges breach of fiduciary duty against both Defendants, NEA and NEA Trust.  Count IX alleges tortious interference with

---

[4]The Court is only addressing the Motion to Dismiss at this time.

contractual relations against the NEA.  Counts X and XI address trust failure and unjust

enrichment, and mirror the federal common law claims raised in Counts IV and V.

On May 28, 2003, Defendants, NEA and NEA Trust, filed a motion to dismiss all counts

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### III.  Standard of Review

Defendants NEA and NEA Trust move to dismiss the Amended Complaint for failure to

state a claim under Rule 12(b)(6).  "In evaluating a Rule 12(b)(6) motion to dismiss for failure to

state a claim, the court must construe the complaint in a light most favorable to the plaintiff and

must accept as true all reasonable factual inferences drawn from well-pleaded factual

allegations."  *In re United Mine Workers*, 854 F. Supp. at 915; *see also Schuler*, 617 F.2d at 608

("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the

benefit of all inferences that can be derived from the facts alleged.").  While the court must

construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the

plaintiff[] if such inferences are not supported by the facts set out in the complaint."  *Kowal v.

MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not

bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d

753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any

documents attached to or incorporated in the complaint, matters of which the court may take

judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Sch.*, 117 F.3d 621,

624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6

(D.C. Cir. 1993).  Factual allegations in briefs of memoranda of law may not be considered when

deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged

in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

## IV.  Discussion

### A.       *Count I Does Not State a Claim for Denial of Benefits under ERISA and Must Be Dismissed*

Plaintiffs' Count I is styled as a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and (a)(3).  Plaintiffs allege that they had "a contractual right to 'Conversion Privileges' which was denied by the NEA, the NEA Trust and/or Prudential." Am. Compl. ¶ 68.  In addition, Plaintiffs allege that "the consideration received by the NEA Trust for the extinguishment of their beneficial membership interests constitutes benefits owed to Member Insureds." *Id*.

ERISA's civil action enforcement provision allows a cause of action for benefits due under terms of an employee benefit plan.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).  The first provision allows a participant or beneficiary to file a civil action in order to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The second provision allows a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(1)(3).

A plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question.  *See, e.g.*, *Clair v. Harris Trust & Sav. Bank*, 190 F.3d

495, 499 (7th Cir. 1999) (Chief Judge Posner holding that "only benefits specified in the plan can

be recovered in a suit under section 502(a)(1)(B)," and that plaintiffs' claim for unspecified

interest on late benefit payments "is inconsistent with the principle that benefits payable under an

ERISA plan are limited to the benefits specified in the plan.") (citing *Massachusetts Mutual Life

Ins. Co. v. Russell,* 473 U.S. 134, 144-47 (1985)) (citations omitted).  The Court may therefore

dismiss an action if the plaintiff is not entitled to a benefit they seek under the ERISA-regulated

plan.  The dispute therefore centers on the terms of the Plan.  It should be noted the Supreme

Court has held that "[a]ny dispute over the precise terms of the plan is resolved by a court under

a *de novo* review standard, unless the terms of the plan 'giv[e] the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"

*Aetna Health Inc.*, 124 S. Ct. at 2496 (quoting *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S.

101, 115 (1989)).

Traditionally, benefit plans do not cover demutualization considerations.  ERISA

specifies some benefits that automatically fall under ERISA regulations, such as medical,

disability, and death benefits, but demutualization consideration is not included in this category.

*See* 29 U.S.C. § 1002(1).  While the statute itself does not address demutualization consideration

as a benefit, the Department of Labor ("DOL") has issued an Advisory Opinion on the matter.[5]

The DOL advisory opinion states:

---

[5]It is appropriate to consider an agency's construction of a statute when "the statute is
silent or ambiguous with respect to the specific issue."  *Mead Corp. v. B.E. Tilley*, 490 US. 714,
722, 109 S. Ct. 2156, 104 L. Ed. 2d 796 (1988).  Although merely persuasive authority, the
agency' opinion is still given some deference.  The principles of *Chevron U.S.A. v. Natural
Resources Defense Council, Inc.* require a court to rely upon a reasonable interpretation of a
statute made by the administrator of the agency in charge of promulgating its regulations.  *See*
467 U.S. 837, 844 (1984).

> The proceeds of the demutualization will belong to the plan if they would be
> deemed to be owned by the plan under ordinary notions of property rights . . . .  In
> the case of an employee pension benefit plan, or where any type of plan or trust is
> the policyholder, or where the policy is paid for out of trust assets, it is the view of
> the department that all of the proceeds received by the policyholder in connection
> with a demutualization would constitute plan assets.

*Chicago Truck Drivers, Helpers, and Warehouse Workers Union Health and Welfare Fund v.*

*Local 710, Int'l Bhd. of Teamsters*, No. 02-3115, 2005 U.S. Dist. WL 525427 at *3 (N.D. Ill.

Mar. 4, 2005) (quoting Employee Benefits Sec. Admin. ("EBSA") Advisory Op.2001-02A n.1

(2001)).  Although the DOL advisory opinion does not address whether member-insureds have

any entitlement to demutualization proceeds, it does make it clear that fiduciaries of employee

welfare benefit plans are required to treat the portion of the demutualization proceeds attributable

to participant contributions as plan assets, rather than as assets belonging to the employers.  *Id.* at

*7-8 ("[T]he appropriate plan fiduciary must treat as plan assets the portion of the

demutualization proceeds attributable to participant contributions.") (quoting EBSA Advisory

Op.2001-02A at n.2).  The DOL leaves the final determination as to whether an item belonged to

a plan, an employer or employees to the consideration of any "contract or other legal instrument

involving the plan documents . . . [and] the action and representations of the parties involved."

*Id.* (quoting U.S. Dep't of Labor's Pension & Welfare Benefits Admin. Office of Regulations &

Interpretations Advisory Op. 92-02A (2002)).

      Based on the advisory language by the DOL, the contractual language of the Plan controls

whether or not demutualization considerations are "benefits" under ERISA for purposes of an

ERISA section 502(a) civil enforcement action.  *See* 29 U.S.C. § 1132(a)(1)(B).  An action under

section 502(a) requires that plaintiff present a prima facie case that the benefit plan is covered

under ERISA and that the claimed benefit is included in that plan.  If the Amended Complaint contains no ERISA covered benefit to which Plaintiffs are entitled, the action must be dismissed for failure to state a claim under R. 12(b)(6).

Plaintiffs argue that the Plan defines "Benefit Program" to include benefits provided through the purchase of group insurance, thereby encompassing the Group Contract.  Am. Compl. Ex. D § 1.14.  Section 1.13 of the Plan defines "Benefit" to include ". . . any amount . . . payable to a participant or beneficiary in the event of death . . . *or other occurrence affecting the participant* . . . in accordance with the terms of any insurance policy . . . and this Plan." *Id.* Ex. D § 1.13 (emphasis added).  Plaintiffs contend that demutualization was an 'occurrence' affecting Plaintiffs in accordance with the terms of their insurance policy, and therefore it should be included as a benefit.  Plaintiffs' argument does not conform to the intent of the Plan, however.  Section 1.13 places "other occurrence" after "death, accident, sickness, disability," which physically affect an insured and provide grounds for which insurance and benefits would be necessary, as opposed to affecting him in an exclusively pecuniary manner.  Am. Compl. Ex. D § 1.13.  It is therefore dubious that "Benefit Program" in the Plan was meant to encompass the Group Contract.

In their amended complaint, Plaintiffs point out:  "Under the Group Contract, Member-Insureds specifically assigned their right to receive divisible surplus to the NEA Trust to use the dividends to reduce the cost of their insurance . . . ."  Am. Compl. ¶ 26.  Then Plaintiffs note that "[u]nlike with dividends, the Group Contract provides no affirmative agreement that would allow, or authorize the NEA Trust to take control of, or apply Member-Insureds' 'equity' or 'membership interest' to other persons . . . ."  Am. Compl. ¶ 27.  This lack of an 'affirmative

agreement' that would entitle the Plan to the demutualization consideration also highlights the fact that there is not a specific benefit that Plaintiffs are being denied. Plaintiffs' claimed benefit does not fall within the intent of the contract, and therefore under the standard of ERISA Plaintiffs have failed to state a claim.

**B.      *Count II Does Not State a Claim for Breach of Fiduciary Duty and Violation of ERISA***

ERISA includes requirements for fiduciaries in charge of administering benefits under the statute. 29 U.S.C. § 1104. A fiduciary is required to discharge his duties "solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1) and (a)(1)(A). This must be done "(B) with the care, skill, prudence, and diligence under the circumstances . . . (D) in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(B) and (D). Violations of this mandate may be enforced under 29 U.S.C. § 1109. Under section 1109, a fiduciary is personally responsible for compensating the plan he or she administered for any losses resulting from the breach of his or her duties. 29 U.S.C. § 1109(a). Furthermore, the D.C. Circuit has found that "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750 (D.C. Cir. 1990).

Plaintiffs assert that "[t]he NEA and the NEA Trust have a fiduciary duty to act in the interest of the Member-Insureds which requires the NEA Trust to act solely in the interest of the Member-Insureds in connection with the Group Contract on behalf of its beneficiaries, the

15

Member-Insureds." Am. Compl. ¶ 73. Plaintiffs claim that Defendants violated their fiduciary duty by failing to notify Member-Insureds of the conversion and by failing to allocate or provide the demutualization consideration for the benefit of the Member-Insureds. Am. Compl. ¶ 75. Plaintiffs further object to what they consider retroactive amendment of the Plan to take custody, control and ownership of the consideration away from the Member-Insureds. *Id.*

Plaintiffs argue that they were denied the ability to exercise their conversion privilege to obtain some form of an individual contract. Plaintiffs are not seeking individual contracts, however, but a share in the demutualization proceeds. The DOL advisory opinion states that if demutualization proceeds are distributed to an ERISA plan by virtue of its status as a group policyholder, or if the group policy giving rise to demutualization proceeds is funded by participant contributions, then the proceeds may not be held or treated as property belonging to the employer or plan sponsor, but must be held and treated as assets of the plan. *See supra* IV.A. Plaintiff's meanwhile assert that "[t]he DOL requires that any 'demutualization compensation' attributable to a group policy must be held for the benefit of the policy's beneficiaries if the premiums for the group policy were contributed by them." Pls.' Opp'n at 23-24 (citing Letter from Acting Assistant Secretary of Labor Alan Lebowitz, Pension Welfare Benefits Administration, U.S. Dept. of Labor, to Theodore Groome, Groom Law Group ("DOL Letter Opinion") at App. Ex. B[6]).

Plaintiffs' position, however, lacks authority. Plaintiffs cite Opinion No. 2001-04A, 2001 WL 429859 (ERISA), which includes the DOL Letter Opinion, to support their position. Plaintiffs quote from the DOL Letter Opinion: "It is the view of the Department that, in the case

---

[6]Plaintiffs Appendix Exhibits are attached to their Opposition.

of an employee welfare benefit plan with respect to which participants pay a portion of the premiums, *the appropriate plan fiduciary must treat as plan assets the portion of the demutualization proceeds attributable to participant contributions.*"  Pls.' Opp'n at 24 (emphasis in Plaintiffs' brief).  However, Plaintiffs' reliance on this advisory opinion is misplaced, because the advisory opinion merely supports the position, established in the last section, that demutualization proceeds should be considered *plan* assets rather than *employer* assets.  The advisory opinion does not suggest that the demutualization proceeds should be considered assets belonging to the *member-insureds*.

In *Hughes Aircraft Company v. Jacobson,* 525 U.S. 432 (1999), the Supreme Court held that, in an ERISA governed plan, surplus returns generated by employee contributions could be applied to other employees in the plan who did not make such contributions.  This holding can be extended to say that, consistent with ERISA's anti-inurement provision, demutualization consideration can be used to fund benefits to participants in different programs within the NEA Plan without violating ERISA.  *See Hughes,* 525 U.S. at 442.  Plaintiffs have failed to establish a term in their contract with Defendants that prevents them from doing so.

Plaintiffs do not contend that Defendants violated their fiduciary duty to all members of the Plan, but merely to Member-Insureds.  In the absence of a contractual provision that requires otherwise, Defendants' fiduciary duty under ERISA was not violated by adding the demutualization consideration to the Plan, and not specifically to the Member-Insureds.  Accordingly, because Plaintiffs have not established such a contractual relationship, and because they do not contend that Defendants have violated their fiduciary duty to the Plan, Plaintiffs' claim for breach of fiduciary duty fails.

**C.**     ***Count III Does Not State a Claim for Partial Termination-Allocation of Residual Assets Under 29 U.S.C. § 1103(d)***

Plaintiffs claim that Defendants violated 403(d) of ERISA, 29 U.S.C. § 1103(d), which governs the termination of welfare benefit plans.  Plaintiffs allege that the Plan was terminated and that Defendants were required to give the demutualization consideration to the Member-Insureds under the statute.  Am. Compl. ¶¶ 76-79.  Section 403(d) of ERISA states:  "The assets of a welfare plan which terminates shall be distributed in accordance with terms of the plan."  29 U.S.C. § 1103(d)(2), *see also* 29 U.S.C. § 1103(d)(1) (noting that some pension plans have different allocation requirements).  Under ERISA a plan is any "plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries . . . ."  29 U.S.C. § 1002(1).  The Plan stipulates that termination shall not deprive participants or beneficiaries of their rights to receive benefits that arose prior to termination, that surplus funds will be disbursed in accordance with the plan, and that the Plan Administrator will give a summary of the effect of the termination to participants.  Am. Compl. Ex. D §13.2.

Plaintiffs maintain that "[u]nder the terms of the NEA Benefits Document, a full termination took place."  Pls.' Opp'n at 34.  Plaintiffs claim that "[t]he language in this document requires that the termination be determined from the participants' perspective in stating 'The benefits provided under this plan shall terminate *with respect to any participant or his family'* when the insurance policy is discontinued."  *Id.* (emphasis in original).  Plaintiffs conclude that the Plan terminated because "from the perspective of the Member-Insureds, their welfare benefit plan terminated."  *Id.*  This reading of the document is untenable.

The provision that Plaintiffs point to, NEA Benefits Document § 6.3, clearly refers to the time at which participants will cease to receive benefits, not to whether the Plan itself terminates. This interpretation is obvious from its inclusion in Article Six of the document, entitled "Benefit Payments," as opposed to Article Thirteen, entitled "Amendment and Termination."  In order for Plaintiff to have an actionable claim under this section, an ERISA plan must have terminated. Plaintiffs have shown neither that the Plan terminated nor that Prudential's conversion effected a termination of a benefit plan within the meaning of ERISA.

Furthermore, ERISA only entitles Plaintiffs to enforce the terms of the terminating plan. Plaintiffs fail to point to a provision in the termination agreement that Defendants failed to follow and that entitles them to the relief they seek, namely the demutualization consideration, and indeed it does not appear that one exists.  *See* Am. Compl. Ex. D § 13.2.  Plaintiffs fail to establish a coherent theory for either termination of a plan under ERISA or why they would be entitled to the demutualization consideration, and accordingly the claim fails.

**D.     Federal Common Law Claims, Counts IV and V, Must be Dismissed**

Plaintiffs' Counts IV and V are federal common law claims for "failure of express trust/resulting trust" and "unjust enrichment-constructive trust."  *See* Am. Compl. ¶¶ 80-91. Defendants argue persuasively that these claims should be dismissed.

*1.     Count IV*

In Count IV, Plaintiffs allege that the NEA trust failed when Prudential demutualized and the proceeds of that demutualization were paid into the NEA trust.  *See* Compl. ¶ 84.  Defendants argue that this claim must be dismissed for two reasons.  First, Defendants argue that ERISA preempts this claim, because "it is dubious, to say the least, that ERISA . . . leaves any room for

claims for relief under a federal common law theory of failure of an express trust when the trust

in issue is an ongoing ERISA-covered trust," in light of the fact that ERISA is "'a comprehensive

and reticulated statute' intended to regulate the benefits field in an exhaustive manner . . . ."

Defs.' Mot. at 30, quoting *Nachman Corp v. Pension Benefit Guarantee Corp.*, 446 U.S. 359,

361 (1980).[7]

Second, Defendants make the substantive argument that, even if ERISA did not preempt

this claim, the Amended Complaint and attached documents make it clear that the NEA trust has

not failed. *Id.* Defendants cite to comment (g) to the Restatement (Second) of Trusts § 411,[8]

---

[7]Defendants' suggestion of preemption finds support in the law.  Count IV of the Amended Complaint alleges that there was an express trust formed by the benefit program under the Group Contract and that the express trust failed when Prudential demutualized and the demutualization consideration was not transferred or allocated to the Member-Insureds.  Am. Compl. ¶¶ 80-86.  Another judge on this Court has written that "this Court believes, as other courts have held, that only claims consistent with the framework and purpose of ERISA can be recognized under the 'federal common law' . . . ."  *Carabillo v. Ullico,* 357 F. Supp. 2d 249, 258-259 (D.D.C. 2004) (footnote omitted).  This Court finds that the federal common law claim of failure of an express trust or resulting trust appears to be inconsistent with the framework and purpose of ERISA.

ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that plan fiduciaries act "with care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  The source of this rule is in the common law of trusts.  *See Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978); *Morrissey v. Curren*, 567 F.2d 546 (2d. Cir. 1977); *Donovan v. Mazzola*, 716 F.2d 1226 (9th Cir. 1983); *see also*, S. Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4838, 4864-66.  The Fourth Circuit noted that Congress, when it enacted ERISA, made even more exacting requirements than those found in the common law of trusts relating to employee benefit trust funds.  *Sinai Hosp. of Baltimore, Inc. v. Nat'l Ben. Fund for Hosp. & Health Care Employees*, 697 F.2d 562, 565 (4th Cir. 1982) (citing *NLRB v. Amax,* 453 U.S. 322 (1981)).  Accordingly, allowing Plaintiffs to file suit against an ERISA covered employee welfare benefit plan for breach of an express trust appears to be contrary to Congress's intent in enacting the statute.

[8]Section 411 states:
Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the

setting out circumstances in which a trust can fail, thereby creating a resulting trust.[9]  Defendants

point out that Plaintiffs do not plead facts that would establish any of these circumstances.

Plaintiffs attempt to salvage this claim by citing instead to the Restatement (Third) of

Trusts § 8.[10]  Plaintiffs argue that"[w]hen Prudential determined to mutualize, the express trust -

the operation of Prudential as a mutual concern - failed."  Pls.' Opp. at 37.  The Court finds,

however, that Defendants' response to Plaintiffs' argument carries the day.

Defendants point out that the common law rule for creation of a resulting trust upon the

failure of an express trust is substantively the same in the two Restatement sections.  Defs.'

Reply at 22.  Defendants note that Plaintiffs, in their opposition, indicate that the alleged failed

_____

transferee holds the trust estate upon a resulting trust for the transferor or his estate,
unless the transferor properly manifested an intention that no resulting trust should
arise or the intended trust fails for illegality.
Restatement (Second) of Trusts § 411.

[9]Comment (g) to Restatement (Second) of Trusts § 411 lists seven such circumstances:
The rule stated in this Section is applicable where the intended trust fails because no
beneficiary is named; because the intended beneficiary is non-existent; because the
intended beneficiary cannot be ascertained; because the intended beneficiary is not
properly designated; because the intended beneficiary is incapable of taking the
beneficial interest; because the intended beneficiary disclaims; because the intended
trust is invalid on the ground of remoteness.
Restatement (Second) of Trusts § 411 comment (g)

[10]Section 8 states:
Where the owner of property makes a donative transfer and manifests an intention
that the transferee is to hold the property in trust but the intended trust fails in whole
or in pary, or the trust is or will be fully performed without exhausting or fully
utilizing the trust estate, the transferee holds the trust estate or the appropriate portion
or interest therein on resulting trust for the transferor or the transferor's successors
in interest unless (a) the transferor manifested an intention that a resulting trust
should not arise, or (b) the trust fails for illegality and the policy against permitting
unjust enrichment of a transferee is outweighed by the policy against giving relief to
one who has entered into an illegal transaction.
Restatement (Third) of Trusts § 8.

trust was the Prudential Insurance Company as a mutual insurance company, rather than the NEA

trust. *Id*. at 23.   Indeed, as quoted above, Plaintiffs' opposition states that "[w]hen Prudential

determined to mutualize, the express trust - the operation of Prudential as a mutual concern -

failed." Pls.' Opp. at 37.   However, as Defendants point out, Plaintiffs have only alleged that

they transferred funds to the NEA trust, while the rule as set forth in the Restatement requires

that the tranferee trust (and not the transferor trust) must fail in order to support a resulting trust

claim.   In light of the fact that Plaintiffs have not alleged that the NEA trust failed, Plaintiffs'

Count IV must be dismissed.

*2.     Count V*

In Count V, Plaintiffs attempt to recover under a federal common law claim of unjust

enrichment.   *See* Am. Compl. ¶¶ 87-91.   In essence, Plaintiffs argue that they were entitled to the

demutualization proceeds, but that instead these funds went into the NEA trust, which was

unjustly enriched, and that the funds should be treated as a constructive trust for Plaintiffs'

benefit.   A constructive trust is a remedy granted by the court when it determines that the person

holding title to a property would profit by a wrong or be unjustly enriched if he or she were

permitted to keep it.   *See* Restatement (Third) of Trusts § 7, comment g.   Plaintiffs, in their

opposition, claim that it is "exceedingly unfair to allow the NEA, or other NEA persons, to gain

and the Member-Insureds to be deprived of the contractual interest in Prudential's residual

surplus." Pls.' Opp. at 38.

Defendants attack this argument on the grounds that the demutualization proceeds are not

in fact Plaintiffs' property, but rather belong to the NEA trust, under the language of the plan

documents.   Defs.' Mot. at 32.   The Court has explained in Section IV(B), *supra*, that pursuant to

22

*Hughes Aircraft*, 525 U.S. 432, demutualization consideration can be used to fund benefits to

participants in different programs within the NEA plan without running afoul of ERISA.  In light

of the Court's finding that the demutualization proceeds do not belong to Plaintiffs, but rather

can be used in other portions of the NEA plan, any claim of unjust enrichment must fail.

Plaintiffs are not entitled to the demutualization consideration, and consequently the funds could

not have been used to unjustly enrich the Plan resulting in the creation of a constructive trust for

Plaintiffs' benefit.

### E.     Plaintiffs' State Law Claims, Counts VI-XI, are Preempted by ERISA___

Plaintiffs raise a number of state law claims that parallel their federal ERISA and federal

common law claims.  Defendants address these state law claims in footnotes to the discussions of

the appropriate federal law claims throughout their motion to dismiss.  *See* Defs.' Mot. at 14 ("In

the Course f discussing each federal claim below, we will show in the margin at the end of the

discussion of the pertinent federal claim that the parallel D.C.-law claim is preempted by ERISA

. . . .").

Plaintiffs' Opposition suggests that the Court should ignore any notion of ERISA

preemption.  Pl.'s Opp'n at 39.  Their reasoning is based upon the premise that the Group

Contract and the Plan are not necessarily "employee welfare benefit plan[s]" under 29 U.S.C. §

1002(1):  "Whether such a plan exists is a question of fact which is generally inappropriate for

resolution under Fed. R. Civ. P. 12(b)(6)."  *Id.* (internal citations omitted).  While it is Plaintiffs'

prerogative to plead state and federal common law claims in the alternative, it is factually

undeniable that the Group Contract and the Plan are "employee welfare benefit plans" within the

meaning of ERISA even if Plaintiffs' claims are not actionable under the ERISA statute.  *See*

Section I, *supra*.

The underlying goal of ERISA is to provide a uniform regulatory regime under federal law for employee benefit plans. *Aetna Health Inc.*, 124 S.Ct. 2488. In order to effectuate this goal, Congress included "expansive" preemption provisions in ERISA to "ensure that employee benefit plan regulation is 'exclusively a federal concern.'" *Id.* at 2491 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981) (citations omitted)). ERISA's preemption clause, section 514(a), 29 U.S.C. § 1144(a), provides that "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Supreme Court, most recently in *Aetna Health Inc. v. Davila* and in a host of earlier decisions, has repeatedly emphasized the expansive scope of this provision. *See Aetna Health Inc.*, 124 S.Ct. at 2495-98; *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); *Pilot Life Ins. Co.* 481 U.S. 41; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983).

This body of law concerning ERISA is instructive in this case. A state law is said to "relate to" an employee benefit plan if it has a "connection with or reference to" such a plan. *Shaw*, 463 U.S. at 97. Explained another way, a cause of action may relate to an ERISA plan within the meaning of Section 514(a) when it is premised on the existence of a plan and when a court must focus its inquiry on the plan in order to resolve the claim. *See Ingersoll-Rand*, 498 U.S. at 140. Further, as the Court held in *Aetna Health Inc.*, a cause-of-action under ERISA's civil enforcement scheme in Section 502(a) preempts other causes of action provided by state or common law if the other cause-of-action "duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . ." *Aetna Health Inc.*, 124 S.Ct. at 2495. Such duplication or

24

supplementation would conflict with legislative intent to make the ERISA remedy exclusive, and "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under [ERISA Section 502(a)] would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54.

Accordingly, the civil enforcement mechanism provided by ERISA in section 502(a), relied upon by Plaintiffs in Count I of the Amended Complaint, preempts Plaintiff's state law claims. Furthermore, Plaintiffs' state law claims "relate to" Plaintiff's employee welfare benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), because they have a "connection with or reference to" that plan, *Shaw*, 463 U.S. at 97, and because these claims "duplicate[], supplement[], or supplant[]" Plaintiff's Count I claim under section 502(a)(1)(B) for denial of benefits. *Aetna Health Inc.,* 124 S.Ct. at 2495. None of Plaintiffs claims fall under the exceptions to preemption in  514(b), 29 U.S.C. § 1144(b), nor do Plaintiffs allege that they do; consequently, the ERISA preemption standard applies to Plaintiffs' case. Each claim will be discussed in turn below.

### 1.    *Plaintiffs' Counts VI and VII are preempted by ERISA*

Plaintiffs' Count VI and VII[11] breach of contract claims are based on the Group Contract, an ERISA plan that Plaintiffs claim Defendant NEA Trust allegedly breached. *See* Am. Compl. ¶¶ 92-98. The claims for breach of contract derive from the failure to provide conversion

---

[11]Defendants do not specifically address Count VII in their motion to dismiss. However, in light of the fact that Count VI and Count VII are both state law breach of contract claims, the Court views this as an oversight. Defendants' arguments with respect to Count VI apply as well to Count VII, and the Court addresses these two claims together.

privileges and deprivation of demutualization consideration.  These claims are inextricably linked to Plaintiffs' allegation that they are entitled to the demutualization consideration as a benefit under their ERISA welfare plan.  Counts VI and VII therefore duplicate the Count I cause of action under ERISA.  As such, Plaintiff's breach of contract claims are preempted under Section 514(a) of the statute.  29 U.S.C. § 1144(a); *see Ingersoll-Rand*, 498 U.S. at 140; *see also* Defs.' Mot. at 18 n.7 (arguing that Count VI duplicates Plaintiffs' Count I, and that Count VI is preempted by ERISA).  In order to recover benefits as a beneficiary under an employee welfare benefit plan, Plaintiffs must rely exclusively on the remedies provided for in ERISA.[12]

### 2.    *Plaintiffs' Count VIII is Preempted by ERISA*

Plaintiffs' Count VIII, breach of fiduciary duty, Am. Compl. ¶¶ 99-103, is undeniably preempted by Breach of ERISA Fiduciary Duty under 29 U.S.C. §§ 1104 and 1109.  Section 409 of ERISA imposes liability for breach of fiduciary duty, and Section 502(a)(2) authorizes a cause of action for breach of that duty.  *See* 29 U.S.C. §§ 1109, 1132(a)(2).  Defendants make this argument in a footnote to their discussion of Plaintiffs' Count II addressing ERISA's fiduciary duty requirements.  *See* Defs.' Mot. at 27 n.12.  Section 502(a)(2) provides that "[a] civil action may be brought . . . (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 409 . . . ."  29 U.S.C. § 1132(a)(2) (2005).  The Supreme Court

---

[12] This Court has found repeatedly that ERISA preempts breach of contract claims related to employee benefit plans.  *See, e.g.*, *Krooth & Altman v. N. Am. Life Assurance Co.*, 134 F. Supp. 2d 96 (D.D.C. 2001); *Moore v. Blue Cross and Blue Shield of the Nat'l Capital Area*, 70 F. Supp. 2d 9 (D.D.C. 1999); *Johnson v. Antioch Univ.*, Civ. No. 91-0133, 1992 U.S. Dist. LEXIS 4931 (D.D.C. 1992); *but see Nat'l Rehab. Hosp. v. Manpower Int'l, Inc.*, 3 F. Supp. 2d 1457 (D.D.C. 1998) (upholding state law breach of contract claim despite ERISA preemption); *Psychiatric Inst. of Washington, D.C., Inc. v. Conn. Gen. Life Ins. Co.*, 780 F. Supp. 24 (D.D.C. 1992) (same).

has found that "[w]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further [] relief, in which case such relief would normally not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (quoting 29 U.S.C. § 1132(a)(2)); *see also Kramer v. Smith Barney*, 80 F.3d 1080, 1083-84 (5th Cir. 1996) (holding that ERISA 502(a)(2) governs claims arising out of alleged fiduciary breaches committed by ERISA-regulated parties, and that related state law claims are consequently preempted). Consequently, the Court finds that Plaintiffs' Count VIII is preempted by ERISA and shall be dismissed.

### 3.      *Plaintiffs' Count IX is Preempted by ERISA*

Defendants address Plaintiffs' state law claim for tortious interference with contractual relations in a footnote to their discussion of Count I, arguing that Count IX, like Count VI, is a state law variant on Count I, and that as a result Count IX is preempted. *See* Defs.' Mot. at 18 n.7. Defendants argue that "[t]he Group Contract is a Plan document . . . . And because it is a plan document, well-settled principles of ERISA preemption dictate that any claim arising out of the alleged breach of the provisions of that document must be stated under ERISA § 502 or not at all." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 52-57 (1987)).

Plaintiffs respond that their Amended Complaint has addressed the four elements of tortious interference with contractual relations. *See* Pls.' Opp'n at 44-45. However, in light of the fact that the Plan at issue in this case is covered by ERISA, the Court finds that Plaintiffs arguments are unavailing. This tortious interference claim relates to an ERISA-covered plan., and as such is preempted by the remedies afforded under the ERISA statute.

### 4.      *Counts X and XI are Preempted by ERISA*

27

Plaintiffs final claims, Counts X and XI, are state law versions of the same failure of express trust and unjust enrichment claims raised in Counts IV and V, which were under federal common law.  Defendants argue in footnotes to their discussions of Counts IV and V that these state law claims are preempted.  *See* Defs.' Mot. at 31-32 nn. 14-15.  In light of the fact that ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), and the broad definition of "relate" afforded by the courts, the Court finds that Counts X and XI are preempted and must be dismissed.

## V.  Conclusion

For the reasons discussed above, Plaintiffs' claims are dismissed.  Plaintiffs' claims under ERISA are dismissed because Plaintiffs have failed to identify a benefit to which they are entitled under the Plan, they fail to identify a breach of fiduciary duty by Defendants and they fail to show that a plan terminated and Defendants violated a termination agreement.  Plaintiffs' federal common law claims of failure of an express trust and unjust enrichment are dismissed because Plaintiffs have not alleged that the NEA trust failed, and because the Court has found that Plaintiffs are not entitled to the demutualization proceeds.  Plaintiffs' remaining state law claims are preempted by ERISA.  An appropriate Order accompanies this Memorandum Opinion.

  /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge